Judge Pryor and I are delighted to welcome Judge Richard Tallman to the 11th Circuit. He's visiting with us from the 9th Circuit. Judge Tallman keeps his chambers in Seattle, Washington. And we appreciate you, Judge Tallman, coming all the way over from the Pacific Coast to help us decide these cases this week. Thanks for having me. And we have four this morning that are scheduled for oral argument. And the first is United States of America v. Najee Oliver. And I see Mr. Blackburn is here for the appellate. Mr. Stuchel is here for the government. Mr. Blackburn, are you ready to proceed? Yes, sir. You may proceed. We're here this morning on the case of Najee Oliver. Najee Oliver has a history of criminal behavior. There's no doubt about that. But he did not qualify for the armed career criminal enhancement that he got. Primarily because the armed career criminal enhancement was, among other things, based on a charge of terroristic threats. Terroristic threats was one of four several charges that Mr. Oliver had, and he pled guilty to terroristic threats. The Georgia statute, and I thought I had it with me, but I don't find it in my materials. I read it earlier yesterday. Georgia statute is divisible. It's divided into several different categories, including one to make a threat of violence, one to make a threat that causes a place to be vacated, like we're going to get a bomb in some place. That could be considered a terroristic threat. And the other is a thing of using some type of chemical or something to fumigate a place, let's say. Well, let me ask you this. The government says that this case is controlled by our 2006 decision in United States v. Greer. And Mr. Oliver was convicted under this Georgia statute, which makes it a crime to commit any crime of violence. A threat to commit any crime of violence always contains an element of threatened violent force against another. Is that right? I disagree with the government on that.  Because Greer did not follow what has been done in the Northern Circuit, I mean the Northern District, in Stewart. And in Stewart v. United States, the district court in the Middle District said that in light of Johnson, petitioner's armed career criminal sentence is no longer valid because petitioner's prior Georgia terroristic threats conviction no longer qualifies as an ACCA predicate offense. Now, this is before Greer. The Middle District had ruled. They later changed their mind on Greer and this court upheld them. Counsel, didn't you suggest that we submit this case on the briefs after Greer came out? I'm having a hard time understanding how a district court decision trumps an Eleventh Circuit decision. No, it doesn't. It doesn't trump the Eleventh Circuit. I was just pointing out that this was a change for the Middle District from its earlier rulings. I'm not sure you've answered Judge Wilson's question. Aren't we bound by Greer? We are to an extent, except that the problem with Greer is it doesn't follow many cases out of other circuits, including U.S. v. Cook, which is out of Nebraska and U.S. v. Sanchez-Martinez, which held that under Minnesota statutes, and this is out of the Eighth Circuit, that in this particular case that the sentencing court basically sentenced him the same as he would have without the armed career criminal and, therefore, it was harmless error. But they held that under the Minnesota statute, that was very similar to the Georgia statute, that to threaten to do something is not the same as a violent act. And that if you take a categorical approach to the statute, the Georgia statute does not require a crime of violence. But didn't the Greer panel determine the statute was indivisible and that the three means of committing the crime are all violent acts made with intent to instill fear in the victim? Yes, sir. So the argument's been made and rejected by the court. It has been, but the court still wanted to hear this one. And the U.S. attorney made an argument earlier that, in briefs, that because of Greer, we didn't need a hearing. And the court decided that they wanted a hearing anyway. And I was afraid that Greer controlled, but taking a modified categorical approach to this statute leaves plenty of doubt as to whether or not it was a crime of violence. And I think that's the key to the thing, is the crime of violence. Because you don't have to commit any violence to make a terroristic threat. I'm going to run you down in my car as a terroristic threat, but it's not a crime of violence because I haven't done anything. I'm going to shoot up your house as a terroristic threat, but it's not a crime of violence because you didn't go shoot it up. You made a wild statement that could be considered a threat, and therefore it's, but it's not a violent crime when you don't carry it out. The argument, as I understand it, and the government can address this when it comes up, is that if we apply the categorical approach after determining that the statute is indivisible, the crime does not qualify as a predicate crime because you can be convicted for threatening to commit a crime of violence against property, right? Right. To release a habit or substance or to burn or damage property. Exactly. Is that the argument that you make? That is primarily my argument, Judge. You don't have to commit a crime of violence against a person. All you have to do is make a statement that you're going to do something that could damage property or cause people to leave a building or scare somebody. All right. I think we have your argument, Mr. Blackburn, and you've reserved some time for rebuttal. I did. I guess I've got a minute and 15 seconds more. Thank you. And we'll hear from Mr. Stuchel. Am I pronouncing your last name correctly? Stuchel, Your Honor. May it please the Court. James Stuchel for the United States. The issue in this case is whether the defendant's prior conviction for the Georgia crime of terroristic threats made by threatening a crime of violence qualifies under the ACCA. This Court need not engage in any fresh analysis because it's already decided that exact same issue twice in the Greer case. The first was in 2006. In that case, Mr. Greer was charged the issue was the exact same one. Well, in the first Greer case, though, the Court did not follow the Supreme Court's direction in Mathis, of course, because Mathis came out after. Why didn't Mathis abrogate the first Greer case? Well, Mathis really did not change the analysis. It focused it. It refined it. It corrected an error that the Ninth Circuit had made. Excuse me, the Eighth Circuit had made under the Iowa statute, but it did not change the analysis whatsoever. What about with respect to divisibility of the statute? Didn't Greer essentially go straight to a modified categorical approach? It did, but, of course, everyone's conceded here that the statute is divisible. In 2006, this Court held in Greer that a prior conviction for Georgia terroristic threats for threatening a crime of violence qualifies as a violent felony. The only issue is whether it held that under the elements clause or the residual clause, which was still viable in 2006. But by the language of the opinion, we know for sure that this Court decided that under the elements clause. We know that for sure because it used the exact same phraseology that still applies under the analysis of the elements clause, whether under DECOMP or Mathis. For example, this Court held that the violent nature of the terroristic threats crime was obvious from the statutory elements, the indictment, and the conviction documents. So it consulted the exact same three objects under the 2006 analysis that were still required to consult today. The elements clause focuses solely on the elements of the statute, and that's what this Court in 2006 based its decision on, the elements of the statute. And as far as divisibility, the Court then uses the Shepard documents, which include the indictment and the conviction. And again, that's exactly what the panel referenced in 2006 to find it was a violent felony. Did Greer address the specific issue we have in this case, though? Because I thought the primary issue in Greer was whether a judge instead of a jury can decide whether a defendant's prior conviction was an Armed Career Criminal Act predicate offense or if this violates Apprendi v. Booker. And Greer was decided before the Supreme Court's decision in Johnson, right? Yes. So Greer did not explicitly address the question raised in this case, did it? There's been some movement in the law since Greer. There has been movement in the law, Your Honor, but under this Court's prior precedent rule, it's still bound by the holding of Greer. And the holding was that the exact same crime at issue here qualifies as a violent felony. This Court has to follow that holding even if this panel thinks it was wrongly decided. But only if the statute is divisible, correct? That's correct. That's correct. But remember that Greer involved the same divisible element, that is, a crime of violence by, excuse me, the threat of making a crime of violence, and it held that that qualified. And that's exactly what here Mr. Oliver's three prior convictions were for. So why don't you address the divisibility issue? Explain to us why the statute is divisible. Yes, it's divisible. The terroristic threat statute has two elements. The first is a threat. The second element is the purpose. Each of those, those are two, each is a required essential element. But each one has several alternative ways in which to fulfill it. For example, the threat element can be fulfilled by threatening to commit a crime of violence, and that's what we have here in this case, or releasing hazardous substance or burning or damaged property. Now, those three are divisible because they're all in the statute, they're separated by or, and they're set out as alternatives. Furthermore, all the Georgia appellate court cases say that those are elements, and we cited four or five of them in our brief saying, for example, that the threat to commit crime of violence is an, quote, essential element. So those are alternative essential elements, and that makes the statute divisible. So you can be convicted under this Georgia statute for threatening to commit any crime of violence against property? Like to release a hazardous substance or to burn or damage property? No, Your Honor. You can't? You cannot. No. That's what the statute says. No. There are two elements, the threat and the purpose. The threat is either to commit a crime of violence or to burn or damage property. It can't be both. And in every indictment, the court specifically states which one of those three alternative elements he's charged with. We've cited dozens of those cases. So you cannot be convicted for committing a crime of violence against property.  There are a number of Georgia cases that state that the crime of making terroristic threats can be committed by either threatening a crime of violence or threatening to burn down property. Yes. That suggests that those are the crime. It's one crime, and therefore, those are means of committing that crime. No. No, certainly not, because there are two – as I said, there are two elements, the threat and the purpose. And within the threat element, those are three alternative ways to fulfill that element. The statute lays them out. They're separated by in the disjunctive, and they're mutually exclusive. So every indictment has – specifies which of the three types of threat the defendant is charged with committing, and then it specifies which of the four purposes the defendant is charged of acting under. So is your argument that we look at the linkage between threat and purpose, and that's what distinguishes a pure threat to burn down a building if it is not made with the intent to terrorize another person or to cause public inconvenience or evacuation and so on? Is that what you're saying? I'm sorry. I did not understand the question. Well, I asked a very poor question. I'm trying to determine in the analysis whether we look at the linkage between the threat and the purpose. And as I read the statute, you've got to read the two together, that the threat becomes a crime of violence when it is made with the purposes that are set forth in the second clause, the second element of the statute. No, I don't think that's quite right. I think there are two essential elements, threat and purpose. There are multiple ways to fulfill the threat element, and there are multiple ways to fulfill the purpose element. So in each case, the indictment specifies which of the three threats the defendant is charged with committing and which of the four purposes he or she is charged with committing. But the case law says that in all cases, someone charged with a threat to commit a crime of violence necessarily involves the threat of physical force against the person of another. So that's what we have here. Mr. Oliver, like Mr. Greer before him, was charged with the threat of committing a crime of violence, and the Greer panel held that that qualifies as a violent felony under the ACCA. That was back in 2006. The analysis really has not changed since then. Even if it has, the court's still bound by that specific holding. Of course, the prior precedent rule applies to the holding even if the reasoning is no longer valid. But there's even more than that because just in September of 2018, another panel of this court, again, made the exact same ruling in the exact same case. That's Greer. But in that case, the parties conceded divisibility, and the court said that in the opinion. Yes, that's correct. But, Your Honor, everyone's conceded divisibility. In the Greer case in the Middle District, both parties conceded divisibility. In the other case, which name now escapes me, in the Northern District, both parties conceded divisibility. I'm certain it's divisible. Have I answered the question? I'm a little confused by your argument because you said there are two elements. There's the threat and the purpose. Yes. But then within the threat element, there are three different ways of making a threat. That's correct. Those sound an awful lot like means rather than elements to me. No, they're not means because in Mathis, this Court said that Mathis is the first case to discuss the distinction between elements and means. Of course, that was a Supreme Court case, not Eleventh Circuit. But there they said the distinction arises when the language of the statute and the purpose for which it fulfills. So the language of the statute can be either an element or a means. It's an element if it's contained in the statute. It's expressed in the disjunctive and, more importantly, if the prosecutor in the State below has to charge and prove that. And that's exactly what all the cases we – But then you get into the cases about the sufficiency of the indictment. In other words, the indictment has to give proper notice to the defendant, and that's why they charge. But that doesn't mean they would have to charge it that way, does it? In other words, that to commit the crime, there would have to be a threat of a crime of violence because you could have a threat to burn down property, and that would not qualify as a predicate, right? That's correct, but every issue of Georgia State law that I've seen says that the prosecutor has to choose among the various alternatives for the threat. What's the authority for that? Excuse me? What's your authority for that? We cited approximately five or six Georgia appellate decisions in our brief saying that those are essential elements of the claim. And we also cited in our appendix about 90 of them, each of which the indictment says crime of violence. And furthermore, we have the pattern jury instructions, which also lay out the three alternatives for the threat as alternatives in parentheses with the instruction to only charge that one that is appropriate to the case. And as if all that weren't enough, we have the recent amendment the Georgia's legislature made to the terroristic threat statute. They made it even clearer by restructuring, and they used, for example, the number one to designate the threat, and they have subletters A, B, and C for the alternative threats. And then they used the number two as the second essential element for the purpose, and they used subletters A, B, C, and D for the different ways in which the purpose can be fulfilled. So that outline structure just entirely proves my point that it's totally divisible among the two elements. If we were to apply the modified categorical approach, this conviction would not qualify because you can't be convicted for making a terroristic threat or communicating a threat of violence in a reckless manner, right? We said in major versus state, the plain language of the statute prohibits threats to commit any, or the Georgia Supreme Court said in major versus state, the plain language of the statute prohibits threats to commit any crime of violence for the purpose of terrorizing another or in reckless disregard of the risk causing such terror or inconvenience. Yes, that's correct. So you can't be convicted under that statute for communicating a threat of violence in a reckless manner, right? But that's only if the purpose element is charged for the purpose of the fourth alternative, reckless disregard of causing terror. That's exactly what happened in major. In major, the defendant was charged with committing terroristic threats. The first element was threatening a crime of violence, and the second element was with the purpose of reckless disregard of causing the terror. So yes, that's one of the four sub-elements of the purpose element and the only one that can be fulfilled by the mens rea of recklessness. But that's not what Mr. Oliver was charged with here. He was not charged under the fourth sub-element with reckless disregard. He was instead charged for the purpose of terrorizing another. And in fact, this court has… But we just look to the language of the statute, don't we? And you can be convicted of this Georgia crime with a mens rea of recklessness. I'm not arguing that the entire crime qualifies categorically. I'm arguing that it's divisible. And so we have to use the modified categorical approach to see which version he was charged with. And then we apply the categorical approach to see whether that involves the required element of threatened physical force. So yes, I'll concede that in major, that defendant was charged with the purpose of reckless disregard of causing terror. So yes, that could be caused – that could be committed with the mens rea of recklessness. But that's not what we have here. Mr. Oliver was charged with – instead with a specific intent of terrorizing another. And the Georgia Supreme Court has held that that requires specific intent. The purpose – in fact, the language says for the purpose of terrorizing another.  Thank you, Counsel. And Mr. Blackburn, you have some time reserved. And I apologize before I do this, but what Mr. Oliver was charged with was his statement over the telephone and then his statement in person that a person was going to pay for this shit. And excuse me, my language, but that's what the language in the pre-sentence report is. And that was what he was charged with, was saying that. And he also – he said it a number of times and he also said that another person and her boyfriend were going to pay as well. Didn't he also tell her that he had a gun and that he was going to shoot up her house? I don't think he ever said that, but he apparently – in another crime he was charged with that he was not convicted of, he apparently went to her house with a gun. Well, he actually fired a shot, didn't he? I don't know that he fired a shot, but he went there with the gun and brandished the gun around. I thought the record said he actually capped off around. I don't remember that if it does, and I'm looking at the sentencing report right now and it doesn't say that. And that is our really only clue as to what the terroristic threat was, was what's in the sentencing report. We don't think it was proper to look back at it to begin with since it's a categorical sort of thing. I'm not sure that you look back and go into the facts of the underlying charge, but just look at what the charge is and what the statute is. And under the Georgia terroristic threat statute, you can make a threat without doing anything, just saying something on the phone like, you're going to pay for this. And to say you're going to pay for this doesn't threaten any particular violence. It doesn't threaten any particular actions. And I think that's the key to this, is that you can violate the Georgia statute by just some offhand remark that is made in an appropriate circumstance, like over the phone to somebody who's called the police on you, or over the phone to somebody who's thrown a brick through your window. You know, we're going to throw a bunch of bricks back in your window. And that's a threat, but it's not really a threat of violence against a person. And I think that's the key to this, is that you can commit an offense under the Georgia statute without ever raising a hand to anybody or committing any violence. It's just down to having made a statement like, I'm going to run over you. I'm going to kill you. I'm going to shoot up your house. I'm going to do other things. Counsel, I'm looking at page 9 of the PSR, at which the probation officer wrote, a witness saw Oliver hit Badger in the face and shove her into the ground. At this time, the defendant stated he had a firearm and would shoot up her house. Are you saying that was a different charge? No, I think that's the same charge. Okay. He was also charged with aggravated assault in this indictment. Well, it goes on to say Oliver followed behind Badger with a gun in his hand and made a motion as if he was going to fire the weapon. Badger was able to close the door and heard one gunshot, followed by Oliver kicking the door, demanding Badger to open it. And then after that is when he said the language that you quoted, that she was going to pay for it. But I would point out that in this particular instance, he was charged with terroristic threats and aggravated assault. But why wouldn't that conduct constitute making a threat with the intent to cause terror in another person? Because the government did not proceed with the aggravated assault. They allowed him to plead guilty to terroristic threats. No, no, I'm focusing just on the terroristic threat. I mean, it seems to me that's a pretty strong factual record to support the charge of making a terroristic threat. I mean, he did everything but shoot her after making the threat. Well, he may have terrorized her by saying what he said, and he may have been guilty of aggravated assault as well. But that wasn't what the court needed to look at. The court had to look at whether the statute itself required violence. And the statute does not require violence, and therefore, just being convicted of that does not mean that you've committed a crime of violence. And I've got 48 seconds left, but sometimes it's best to shut up, and that's often the hardest thing a lawyer ever has to learn. Well, we appreciate your service, Mr. Blackburn. I see you were appointed to represent Mr. Oliver for this appeal, and the court thanks you for your service. Thank you, Judge. And the next case will be Calvin Wirth.